**Emily Sheridan, Plaintiff in Error, v. Chicago & Oak Park Elevated Railroad Company, Defendant in Error.**

### Gen. No. 14,887.

1. VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the weight of the evidence unless clearly and manifestly so.

2. INSTRUCTIONS—*what not singling out particular evidence.* To instruct singly with respect to a particular substantive defense, is not the singling out or selection of a particular fact.

Action in case for personal injuries. Error to the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed February 15, 1910.

ELMER W. ADKINSON and JAMES HIBBEN, for plaintiff in error.

CLARENCE A. KNIGHT and WILLIAM G. ADAMS, for defendant in error.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

Mrs. Sheridan, plaintiff below, brought suit against

the Elevated Railroad Company to recover damages for personal injuries sustained by being run into by one of its trains. A trial by jury was had, a verdict for the defendant returned and the trial judge rendered judgment according to the verdict. Mrs. Sheridan prosecutes this writ of error to reverse that judgment.

The occurrence in question took place shortly before two o'clock in the afternoon on September 17, 1903. Plaintiff was walking across the company's tracks on South boulevard where Euclid avenue runs from the south into that boulevard, in Oak Park, Illinois. South boulevard is a street running east and west, appears to be a street of rather more than ordinary width and the north fourteen to twenty feet thereof are occupied by two tracks of the defendant. East of Fifty-second avenue defendant's tracks are elevated, but at Fifty-second avenue the tracks of the defendant's elevated railroad descend to the surface and at the place in question, which is west of Fifty-second avenue, the tracks run upon the surface of the ground. The north track is the west-bound track and the south track is the east-bound track. Euclid avenue does not cross South boulevard and north of that boulevard lies the right of way of the Chicago and North-Western Railway Company. Within the right of way of the North-Western Railway Company runs a platform from Oak Park avenue, the next street on the west, to a point opposite Euclid avenue. From this platform two walks lead south, through a fence on the south line of the right of way, across defendant's tracks respectively at points approximately opposite the east and west sidewalks of Euclid avenue. These walks incline slightly toward the south, because the platform is higher than South boulevard. Mrs. Sheridan came along one of these walks at the time in question, walking south from the platform. She tells us the day was a very clear, bright, sunny day and that she is "long-sighted." There is a square conflict in

the evidence whether she came on the east or on the west walk. It appears that on this question the preponderance of the evidence is clearly with the defendant; but, although a telegraph pole stood between the walks which at one point of time must have shut off her view of the approaching train, if she were on the west walk, we regard it as unnecessary to the decision of this case to determine that question. Oak Park avenue station of the defendant was on the east side of Oak Park avenue. Mrs. Sheridan testified she walked slowly down the walk to within two feet of the opening in the fence where she paused and rested some packages she carried against the east hand rail. This point where she stopped was about two feet north of the north rail of the north track of defendant's road. While she stood there an east-bound train of defendant pulled out of the Oak Park avenue station and passed her. In the front car of that train she observed and watched a couple of friends until that car had passed Euclid avenue. She further testified that she then looked west to see whether any other car or train was coming and saw none. Then she looked east and saw the east-bound train going on the south track. She was unable to say whether by that time the train had cleared the east side of Euclid avenue, but would say that the last car was then approximately at the west crossing or a little beyond. She clearly saw the train as a whole as it receded. She then started to cross and was struck by the southwest corner of the front car of a west-bound train, which came from the east on the north track, was knocked down between the two tracks, rendered unconscious and seriously injured.

The motorman of the train testified he first saw plaintiff when his train was about 400 or 500 feet distant and that then she was coming east on the platform. Up to about the point where he first observed her he had been going at full speed, twenty to thirty miles an hour, but about that time he shut off the motor

and began slowing up to make the station stop at Oak Park avenue. He saw plaintiff come walking east slowly, facing toward his train, and turn south on the walk toward the track. He also saw her stop, close to the fence of the North-Western right of way—about eight or ten feet from the place where she was struck. While stopping she looked up in his direction. When she started to cross the tracks his train was within a few feet of her and she started "in a brisk little walk." He threw his brake "into the emergency" and after striking her his train, consisting of two cars, did not pass her by entirely. When the train stopped she was lying by the side of the rear car between the middle and the rear end thereof. He testified he thought she saw him and therefore did not blow his whistle.

There was no flagman at the crossing and no signal of any kind was given as the train approached.

The approaching west-bound train was unquestionably plainly to be seen by plaintiff, not only before she stopped but also while she walked the few feet, from the place she stopped, out upon the track in front of the train which struck her. Plaintiff's counsel's theory is that as plaintiff looked east she failed to distinguish between the receding and the approaching trains. She testified that although the tracks toward the east run in a practically straight line she did not observe the approaching train as she looked east. It is argued on her behalf that by a condition created by defendant she was deceived into a failure to observe the approaching train; that is, because, as shown by the evidence, the front end of the front or motor car is in appearance just the same as the rear end of the last car. The effect produced upon the mind in watching one train going and another approaching, it was testified, is as if one train dissolved into another. The theory and the argument, however, together with the evidence, present nothing but questions of fact. We may assume that defendant was shown to be negligent and nevertheless we fail to see any reason

for reversing the judgment. A principal question in the trial was whether plaintiff by negligence on her part contributed to bring about the injury. The verdict must be regarded as a finding by the jury against the plaintiff upon this question. The trial judge approved of the verdict. The evidence, in our opinion, is such as to leave ample room for the jury to arrive at the conclusion that plaintiff failed to exercise the proper degree of care for her own safety and that such failure was a proximate cause of her injury. We have carefully scrutinized the evidence and can arrive at no other result.

The errors charged against the instructions of the court we do not find to be well taken. In instructing as the court did with reference to contributory negligence, the court instructed upon a substantive defense. This was not a singling out, or selection, and instructing upon a particular fact. We find no error requiring a reversal. The judgment of the Superior Court must be affirmed.

*Affirmed.*